### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANSY BELIZAIRE & ANTHONY MCALLISTER, on behalf of themselves and all other persons similarly situated,<br><br>                   Plaintiffs,<br><br>v.<br><br>AHOLD U.S.A, INC., AHOLD DELHAIZE USA, INC., PEAPOD, LLC, & THE STOP & SHOP SUPERMARKET COMPANY LLC,<br><br>                   Defendants. | Civil Action No. 18-CV-05020 (LGS) |

### MEMORANDUM OF LAW IN SUPPORT OF <u>DEFENDANTS' MOTION TO DISMISS</u>

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................1

PROCEDURAL HISTORY ......................................................................................4

STATEMENT OF FACTS ALLEGED IN THE AMENDED COMPLAINT ............................5

    A.    Plaintiffs' Employment with Stop & Shop.............................................5

    B.    Plaintiffs' Employment Was at All Times Governed by the CBA Between Local 342 and Stop & Shop......................................................5

    C.    Customers Are Notified That Mandatory Delivery Fees Are Not Tips. .............6

ARGUMENT ....................................................................................................7

I.    STANDARD OF REVIEW ..............................................................................7

II.    PLAINTIFFS' CLAIMS SHOULD BE DISMISSED IN THEIR ENTIRETY WITH PREJUDICE.........................................................................................9

    A.    Plaintiffs' New York Tip Law Claim is Completely Preempted by the NLRA. .................................................................................9

    B.    Plaintiffs' New York Tip Law Claim is Completely Preempted by Section 301 of the LMRA. .............................................................11

    C.    Plaintiffs' Tip Claims Are Completely Preempted by the FAAAA...................12

    D.    Plaintiffs' Amended Complaint Fails to State Any Plausible Claim Against Defendants Under Rule 12(b)(6).......................................14

        1.    Plaintiffs Fail to State a Claim Under the New York Tip Law. .............14

        2.    Plaintiff McAllister Fails to State a Claim Under the WTPA. ................18

    E.    Plaintiffs Should Not Be Permitted To Amend Their Complaint A Second Time...................................................................................19

CONCLUSION ..............................................................................................20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Am. Fed'n of Musicians & Employers' Pension Fund v. Neshoma Orchestra & Singers, Inc.*,
No. 17-CV-2640 (JGK), 2018 WL 2338764 (S.D.N.Y. May 23, 2018) ............................9, 11

*Antares Aircraft, L.P. v. Fed. Republic of Nigeria*,
948 F.2d 90 (2d Cir. 1991), *aff'd on remand*, 999 F.2d 33 (2d Cir. 1993) ..............................8

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ...........................................................................................................7

*Atl. Recording Corp. v. Project Playlist, Inc.*,
603 F. Supp. 2d 690 (S.D.N.Y. 2009) ...............................................................................8

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
493 F.3d 87 (2d Cir. 2007) ................................................................................................8

*Beacon Enterprises, Inc. v. Menzies*,
715 F.2d 757 (2d Cir. 1983) ..............................................................................................8

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ...........................................................................................................7

*Brown v. Daikin Am., Inc.*,
No. 10-CV-4688 CS, 2011 WL 10842873 (S.D.N.Y. Aug. 19, 2011) ................................19

*Cordero v. N.Y. Inst. of Tech.*,
No. 12-CV-3208 (SJF), 2013 WL 3189189 (E.D.N.Y. June 20, 2013) ................................17

*Del-Orden v. Bonobos, Inc.*,
No. 17 Civ. 2744 (PAE), 2017 WL 6547902 (S.D.N.Y. Dec. 20, 2017) ...........................6, 8

*DelCostello v. Int'l Bhd. of Teamsters*,
462 U.S. 151 (1983) .........................................................................................................12

*Feldman v. United Parcel Serv., Inc.*,
No. 06 CIV. 2490(MHD), 2008 WL 800989 (S.D.N.Y. Mar. 24, 2008),
*opinion modified on reconsideration*, No. 06 CIV. 2490 (MHD), 2008 WL
2540814 (S.D.N.Y. June 25, 2008) ...................................................................................14

*Fellows v. CitiMortgage, Inc.*,
710 F. Supp. 2d 385 (S.D.N.Y. 2010) ...............................................................................13

*Int'l Longshoremen's Ass'n, AFL–CIO v. Davis*,
    476 U.S. 380 (1986) ...................................................................................................... 9

*John Street Leasehold, LLC v. Capital Mgmt. Res., L.P.*,
    No. 98-cv-1965, 2001 WL 310629 (S.D.N.Y. March 29, 2001)................................................ 8

*Johnson v. D.M. Rothman Co.*,
    861 F. Supp. 2d 326 (S.D.N.Y. 2012) ............................................................................ 11, 12

*Kamen v. Am. Tel. & Tel. Co.*,
    791 F.2d 1006 (2d Cir. 1986) .......................................................................................... 8

*Kehr Packages, Inc. v. Fidelcor, Inc.*,
    926 F.2d 1406 (3d Cir. 1991) .......................................................................................... 9

*Lingle v. Norge Div. of Magic Chef, Inc.*,
    486 U.S. 399 (1988) ...................................................................................................... 11

*Litvinov v. UnitedHealth Grp. Inc.*,
    No. 13 CIV. 8541 KBF, 2014 WL 1054394 (S.D.N.Y. Mar. 11, 2014) ................................ 18

*Lopresti v. Merson*,
    No. 00 CIV. 4255 (JGK), 2001 WL 1132051 (S.D.N.Y. Sept. 21, 2001) ......................... 9, 11

*Malik v. Meissner*,
    82 F.3d 560 (2d Cir. 1996) .............................................................................................. 8

*Martin v. Reno*,
    No. 96-cv-7646, 1999 WL 527932 (S.D.N.Y. July 22, 1999) .................................................. 9

*Milanese v. Rust-Oleum Corp.*,
    244 F.3d 104 (2d Cir. 2001) .......................................................................................... 19

*Morales v. Trans World Airlines, Inc.*,
    504 U.S. 374 (1992) ...................................................................................................... 13

*Nat'l Treasury Emp. Union v. Kurtz*,
    636 F.2d 411 (D.C. Cir. 1980)........................................................................................ 12

*Neitzke v. Williams*,
    490 U.S. 319 (1989) ........................................................................................................ 7

*O'Callaghan v. Uber Corp. of Cal.*,
    No. 17 CIV. 2094 (ER), 2018 WL 3302179 (S.D.N.Y. July 5, 2018) ................................... 18

*Orozco v. Fresh Direct, LLC*,
    No. 15-CV-8226 (VEC), 2016 WL 5416510 (S.D.N.Y. Sept. 27, 2016) ....................... *passim*

*Overka v. American Airlines, Inc.*,
    790 F.3d 36 (1st Cir. 2015) ............................................................................... 14

*Pistolesi v. Calabrese*,
    No. 11 CIV. 5598 MEA, 2015 WL 1573364 (S.D.N.Y. Apr. 9, 2015) ............................... 12

*Republic Steel Corp. v. Maddox*,
    379 U.S. 650 (1965) ...................................................................................... 12

*Reyes v. Sofia Fabulous Pizza Corp.*,
    No. 13CIV7549LAKJCF, 2014 WL 12768922 (S.D.N.Y. Apr. 7, 2014) ........................... 18

*Robinson v. Wash. Metro. Area Transit Auth.*,
    167 F. Supp. 3d 118, 126-27 (D.D.C. 2016) ........................................................... 12

*Rowe v. N.H. Motor Transp. Ass'n*,
    552 U.S. 364 (2008) ...................................................................................... 13

*San Diego Bldg. Trades Council v. Garmon*,
    359 U.S. 236 (1959) ............................................................................ 2, 9, 10, 11

*United Paperworkers Int'l Union v. Misco, Inc.*,
    484 U.S. 29 (1987) ........................................................................................ 12

*United Parcel Serv., Inc. v. Flores-Galarza*,
    385 F.3d 9 (1st Cir. 2004) ................................................................................ 14

*Vaca v. Sipes*,
    386 U.S. 171 (1967) ...................................................................................... 12

*Voilas v. Gen. Motors Corp.*,
    170 F.3d 367 (3d Cir. 1999) ............................................................................... 9

**Statutes**

49 U.S.C.A. § 13102 ........................................................................................... 13

15 U.S.C. § 7001(a)(1) ........................................................................................ 18

29 U.S.C. § 158(a)(5) ........................................................................................... 2

29 U.S.C. §§ 158(a)(5), (d) ................................................................................... 10

29 U.S.C. § 185(a) .......................................................................................... 2, 11

49 U.S.C. § 14501(c)(1) ........................................................................................ 13

49 U.S.C. § 14501(c)(2)(B) .................................................................................... 14

Airline Deregulation Act ..................................................................................................... 13, 14

Electronic Signatures and Records Act, N.Y. State Tech. Law § 304 ........................................ 18

FAAAA ............................................................................................................................. passim

Fair Labor Standard Act ......................................................................................................... 11, 18

Interstate Commerce Commission Termination Act of 1995 ............................................... 12

Labor Management Relations Act Section 301 ................................................................. passim

Massachusetts General Laws ch. 149, § 152A ........................................................................... 4

Massachusetts Tip Law ....................................................................................................... 4, 13, 14

National Labor Relations Act ............................................................................................ passim

New York Labor Law ............................................................................................................. 11

New York Tip Law .............................................................................................................. passim

New York Wage Theft Prevention Act ............................................................................. passim

**Other Authorities**

Fed. R. Civ. P. 12 ............................................................................................................... passim

Fed. R. Civ. P. 56 ..................................................................................................................... 8

N.Y. Comp. Codes R. & Regs. tit. 12, § 146-2.18 ...................................................................... 17

## PRELIMINARY STATEMENT

Defendants Ahold U.S.A., Inc. ("Ahold USA"), Ahold Delhaize USA, Inc. ("Ahold Delhaize USA"), Peapod, LLC ("Peapod"), and The Stop & Shop Supermarket Company LLC ("Stop & Shop") (collectively, "Defendants"), by and through their undersigned counsel, file this Memorandum of Law in support of their Motion to Dismiss the First Amended Complaint (the "Amended Complaint") of Plaintiffs Ansy Belizaire ("Belizaire") and Anthony McAllister ("McAllister") (together, "Plaintiffs"), pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). Plaintiffs allege that Defendants violated New York Labor Law § 196-d (the "New York Tip Law") by failing to pay Plaintiffs and other New York delivery drivers the delivery fee charged to Stop & Shop customers. In addition, McAllister claims that Defendants violated the New York Wage Theft Prevention Act ("WTPA") by failing to provide him with the requisite wage notices. As set forth below, both claims should be dismissed in their entirety, with prejudice.

As an initial matter, the Court does not have subject matter jurisdiction to decide Plaintiffs' claim under the New York Tip Law because it is preempted by the National Labor Relations Act ("NLRA"). The NLRA provides the exclusive scheme for administrative investigation and adjudication before the National Labor Relations Board ("NLRB") of claims that, as here, allege an unfair labor practice. At all relevant times, Plaintiffs' employment was governed by the collective bargaining agreement between Stop & Shop and the United Food and Commercial Workers Union Local 342 (the "CBA"). Plaintiffs' New York Tip Law claim alleges that Defendants' policy of charging customer delivery fees restricts and interferes with Plaintiffs' ability to receive customer tips. The CBA, however, expressly governs Plaintiffs' compensation as a mandatory subject of bargaining under federal labor law. The CBA

specifically prohibits Stop & Shop from implementing any policy that restricts Plaintiffs' ability to receive tips without first negotiating and agreeing to that policy with the Local 342 union.

Employers who fail to bargain in good faith or who unilaterally modify labor contracts without union consent violate Section 8 the NLRA. *See* 29 U.S.C. § 158(a)(5); § 158(d). Under the Supreme Court's long-established *Garmon* preemption doctrine, conduct even *arguably* covered by Section 8 of the NLRA is preempted. Here, Plaintiffs' claim that the policy of charging delivery fees to customers restricts and interferes with the negotiated compensation structure for drivers set forth in the CBA can be, and therefore must be, decided exclusively before the NLRB, and not by this Court.

Alternatively, Plaintiffs' tipping claim should be dismissed because it is preempted by Section 301 of the Labor Management Relations Act ("LMRA"), which forecloses state law claims that involve the interpretation of, or are inextricably intertwined with, a CBA. *See* 29 U.S.C. § 185(a). As a threshold issue, Plaintiffs allege they are owed additional monies for gratuities even though the governing CBA provides that Stop & Shop may not restrict "tips" for its delivery drivers. Determining whether the Plaintiffs are entitled to the delivery fees is inextricably intertwined with the CBA's compensation structure and history. Accordingly, to the extent Plaintiffs' claims survive *Garmon* preemption, they are nonetheless preempted by Section 301.

Plaintiffs' tip claim is also independently preempted by the Federal Aviation Administration Authorization Act ("FAAAA"), which broadly preempts local laws having even an indirect connection with the rates or services of covered motor carriers who, as Plaintiffs allege with respect to Defendants, are engaged in the transportation of property. Because

Plaintiffs' own allegations contend that their New York Tip Law claim directly relates to Defendants' delivery rates and services, that claim is preempted.

Even if the Court finds that Plaintiff tip claim is not preempted on one or more of the above grounds, it should be dismissed in the alternative because the conclusory allegations in the Amended Complaint fail to state a plausible claim under Rule 12(b)(6).  Plaintiffs' claims turn on whether reasonable customers would expect that the fixed delivery fees were actually tips being paid to drivers.  But Plaintiffs' have not pled any plausible facts showing that reasonable customers would reach that conclusion, particularly considering the prominent disclaimers on the Peapod delivery website advising customers that tipping is *entirely optional*.  When presented with nearly identical facts in *Orozco v. Fresh Direct, LLC*, No. 15-CV-8226 (VEC), 2016 WL 5416510, at *5 (S.D.N.Y. Sept. 27, 2016), this Court dismissed an identical New York Tip Law claim brought on behalf of grocery delivery drivers.  The same result should follow here.

Finally, Plaintiff McAllister's claim that he did not receive wage notices as required under the WTPA should be dismissed for the straightforward reason that he received and signed all required wage notices in the exact form approved by the New York Department of Labor.

No amendment could cure Plaintiffs' tipping claims, which are preempted as a matter of law by the NLRA, the LMRA, and the FAAAA.  And despite having weeks to consider Defendants' grounds for dismissal under Rule 12(b)(6), Plaintiffs' only response was to add a few conclusory allegations that do not bring their claims any closer to satisfying the *Twombly/Iqbal* pleading standard, particularly in light of the irrefutable documentary evidence. Accordingly, Plaintiffs' Amended Complaint should be dismissed in its entirety, with prejudice and without leave to amend.

## PROCEDURAL HISTORY

Plaintiffs commenced this putative class action on June 25, 2018 in New York State Court, alleging a cause of action under the New York Tip Law, a similar claim on behalf of Belizaire and other allegedly similarly situated drivers under the Massachusetts Tip Law, Massachusetts General Laws ch. 149, § 152A, and McAllister's claim under the WTPA. *See* Dkt. No. 12-3. Defendants timely removed Plaintiffs' original Complaint to this Court on June 5, 2018. *See* Dkt. No. 1. Pursuant to the Court's Individual Rules of Practice, Defendants filed a pre-motion letter on June 21, 2018, setting forth the proposed grounds for this motion to dismiss, including on the basis that, despite his affidavit claiming to the contrary, Belizaire did not work in Massachusetts during the statute of limitations period under the Massachusetts Tip Law. *See* Dkt. No. 18. In accordance with the Court's July 11, 2018 order following the parties' initial conference, Defendants filed a letter on July 20, 2018, further explaining why Plaintiffs' New York Tip Law claim should be dismissed. *See* Dkt. Nos. 27, 30. On August 3, 2018, Plaintiffs filed the Amended Complaint. *See* Dkt. No. 31. Because Belizaire did not work in Massachusetts within the relevant statute of limitations period, Plaintiffs have withdrawn their claim under the Massachusetts Tip Law. *Compare* Dkt. No. 12-3, *with* Dkt. No. 31.

## STATEMENT OF FACTS ALLEGED IN THE AMENDED COMPLAINT[1]

### A.     Plaintiffs' Employment with Stop & Shop.

Plaintiffs are former delivery drivers who were employed by Stop & Shop to deliver groceries ordered online by customers in New York.  *See* Dkt. No. 31 ("Am. Compl."), ¶¶ 7-8, 48.  Customers place their orders through a website called "Peapod by Stop & Shop" (the "Website"), with order packing and delivery completed by Stop & Shop employees.  *See* Declaration of Jason Burns ("Burns Decl."), ¶ 2.  Belizaire worked for Stop & Shop in New York from approximately 2014 until 2017.  Am. Compl., ¶ 7.  McAllister worked for Stop & Shop in New York from approximately 2012 to April 2015.  *Id.*, ¶ 8.  At the time of his hire, and in each subsequent year until his separation in April 2015, McAllister received and electronically signed a wage notice in the exact form approved by the New York Department of Labor.  *See* Declaration of Ann Nichols ("Nichols Decl."), ¶ 3; Exs. A-C.

### B.     Plaintiffs' Employment Was at All Times Governed by the CBA Between Local 342 and Stop & Shop.

At all relevant times, the CBA between Stop & Shop and the United Food and Commercial Workers Union Local 342 (the "Local 342") governed Plaintiffs' employment and the employment of all Stop & Shop delivery drivers in New York.  *See* Declaration of Robert Spinella ("Spinella Decl."), ¶ 3.  Pursuant to the CBA, Stop & Shop has exclusive authority to control the terms of employment of Plaintiffs and other drivers, including "the right to hire, transfer, suspend, layoff, recall, promote, discharge for cause, assign or discipline [drivers]

---

[1] For purposes of this motion only, Defendants assume certain facts (but not the conclusions) alleged in Amended Complaint to be true.  Defendants expressly deny Plaintiffs' claims, including without limitation that Defendants jointly employed Plaintiffs and/or that the Defendants collectively or jointly charged delivery fees or provided any of the customer services alleged in the Amended Complaint.

from duty." Spinella Decl., Ex. A (Article 1, at p. 3). The CBA expressly governs Plaintiffs'

wages and compensation, (*id.*, Article 31, at p. 22), ***including through a provision titled "Tip***

***Policy" that governs Plaintiffs' rights to receive tips, and provides that any changes to those***

***rights must be collectively bargained***:

> [Stop & Shop] at no time during the life of this Agreement shall institute a policy
> that restricts the accepting of tips from customers . . . If the company desires to
> make this change it must first negotiate with the Union and only by mutual consent
> shall the change take place.

*Id.* (Article 32 – "Tip Policy," at p. 22).

### C.     Customers Are Notified That Mandatory Delivery Fees Are Not Tips.

Plaintiffs' allege that during their employment Defendants had a policy of charging

customers a mandatory delivery fee for groceries ordered online. Am. Compl., ¶ 55. To have

their groceries delivered, customers must order at least $60 worth of groceries through the

Website. *See* Burns Decl., Ex. A. The delivery fee is inversely related to the size and value of

the deliveries. *See* Burns Decl., Ex. A. The delivery fee is fixed at $9.95 for deliveries between

$60 and $99.99, and $6.95 for deliveries over $100. *See id.*[2]  The delivery fee can be discounted

to as low as $2.95. *See id.* When customers place orders through the Website, they are notified

in writing that they are being changed a mandatory delivery fee. *See* Am. Compl., ¶¶ 58-61.

The "Service Fees & Tipping" section of the Website has explained to customers the

amount of the delivery fees being charged. *See* Burns Decl. Ex. A. Directly below the

---

[2] Plaintiffs' allege that "the delivery fee added to customers' orders begins at $6.95 but increases
based on the value of the order." Am. Compl., ¶ 56. That allegation is flatly contradicted by the
Website incorporated by reference in the Amended Complaint, and therefore Plaintiffs' allegation
need not be accepted as true. *See Del-Orden v. Bonobos, Inc.*, No. 17 Civ. 2744 (PAE), 2017 WL
6547902, at *12 (S.D.N.Y. Dec. 20, 2017) (where allegations in complaint are inconsistent with
website incorporated by reference, the website is controlling).

information about delivery fees, the "Service Fees & Tipping" section includes a clearly

identified disclosure informing customers of the following:

> **TIPPING**
> Tipping is optional.  It is not expected but always appreciated.

Burns Decl. Ex. A (emphasis in original).  As is apparent from these disclosures, there is a clear

distinction between delivery fees and tips, and the mandatory delivery fee is not a tip that is paid

to Stop & Shop's delivery drivers.  Am. Compl., ¶ 57.

<u>**ARGUMENT**</u>

**I.        STANDARD OF REVIEW**

The purpose of Rule 12(b)(6) is to "streamline litigation by dispensing with needless

discovery and factfinding" and to eliminate baseless claims.  *Neitzke v. Williams*, 490 U.S. 319,

326-27 (1989).  To survive a motion to dismiss, a complaint must contain sufficient facts which,

when accepted as true, "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  A claim

has "facial plausibility" *only* when the plaintiff "pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556

U.S. at 678.  The standard under Rule 12(b)(6) demands that plaintiffs set forth facts that go

beyond "unadorned, the-defendant-unlawfully-harmed-me accusation[s]," "'labels and

conclusions,'" "'a formulaic recitation of the elements of a cause of action,'" or "'naked

assertion[s].'"  *Id.* (citing *Twombly*, 550 U.S. at 555, 557).  Accordingly, the basic principle that

a court must accept all allegations as true is inapplicable to either legal conclusions or "mere

conclusory statements."  *Id.*

In resolving a motion to dismiss, courts may consider statements or documents

incorporated into the complaint by reference, as well as documents possessed by or known to the

plaintiff and upon which the plaintiff relied in bringing the suit.  *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 98 (2d Cir. 2007).  Where, as here, a website "is not only incorporated by reference in the Complaint but is at the center of Plaintiffs' allegations . . . the Court may consider the website in its totality as it existed during the relevant time period in resolving Defendants' motion to dismiss."  *Orozco*, 2016 WL 5416510, at *5 (citing *Atl. Recording Corp. v. Project Playlist, Inc.*, 603 F. Supp. 2d 690, 694 n.3 (S.D.N.Y. 2009)).  The Court is not required to accept as true allegations that are contradicted by documentary evidence incorporated in the Amended Complaint.  *See Del-Orden*, No. 17 Civ. 2744 (PAE), 2017 WL 6547902, at *12 (where allegations in complaint are inconsistent with website incorporated by reference, the website is controlling).

Defendants move pursuant to Rule 12(b)(1) to dismiss Plaintiffs' New York Tip Law claim for lack of subject matter jurisdiction on the grounds that the NLRB has exclusive jurisdiction because Plaintiffs' claims amount to an unfair labor practice under federal law.  "On a motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), the court may consider matters outside the pleadings, such as affidavits, documents, and testimony.  *See, e.g.*, *Antares Aircraft, L.P. v. Fed. Republic of Nigeria*, 948 F.2d 90, 96 (2d Cir. 1991), *aff'd on remand*, 999 F.2d 33 (2d Cir. 1993); *Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986); *John Street Leasehold, LLC v. Capital Mgmt. Res., L.P.*, No. 98-cv-1965, 2001 WL 310629, at *2 (S.D.N.Y. March 29, 2001).  Thus, the standard used to evaluate a Rule 12(b)(1) motion is similar to that used for summary judgment under Fed. R. Civ. P. 56. *See Kamen*, 791 F.2d at 1011.  The plaintiff has the ultimate burden of proving the Court's jurisdiction by a preponderance of the evidence.  *See Malik v. Meissner*, 82 F.3d 560, 562 (2d Cir. 1996); *Beacon Enterprises, Inc. v. Menzies*, 715 F.2d 757, 762 (2d Cir. 1983); *see*

*also Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991) (when subject

matter jurisdiction is challenged under Rule 12, plaintiff must bear burden of persuasion); *Martin*

*v. Reno*, No. 96-cv-7646, 1999 WL 527932 (S.D.N.Y. July 22, 1999).  *Am. Fed'n of Musicians*

*& Employers' Pension Fund v. Neshoma Orchestra & Singers, Inc.*, No. 17-CV-2640 (JGK),

2018 WL 2338764, at *2 (S.D.N.Y. May 23, 2018).

## II.    PLAINTIFFS' CLAIMS SHOULD BE DISMISSED IN THEIR ENTIRETY WITH PREJUDICE.

### A.    Plaintiffs' New York Tip Law Claim is Completely Preempted by the NLRA.

This Court does not have subject matter jurisdiction over Plaintiffs' New York Tip Law

claim, and therefore it must be dismissed.  Under long-standing Supreme Court precedent, when

conduct is even *arguably* subject to Section 8 of the NLRA, "the States as well as the federal

courts must defer to the exclusive competence of the National Labor Relations Board if the

danger of state interference with national policy is to be averted." *San Diego Bldg. Trades*

*Council v. Garmon*, 359 U.S. 236, 245 (1959); *see also Voilas v. Gen. Motors Corp.*, 170 F.3d

367, 378 (3d Cir. 1999) ("*Garmon* preemption protects the exclusive jurisdiction of the NLRB

over unfair labor practice proceedings; accordingly, if a cause of action *implicates* . . . conduct

that would be prohibited as an unfair labor practice under section 8 of the NLRA, the cause of

action is preempted.") (emphasis added).

In *Garmon*, the Supreme Court recognized that "Congress conferred primary jurisdiction

over disputes that fall within . . . section 8 of the NLRA on the [NLRB] to ensure uniform

interpretation of the NLRA." *Lopresti v. Merson*, No. 00 CIV. 4255 (JGK), 2001 WL 1132051,

at *10 (S.D.N.Y. Sept. 21, 2001) (citing *Int'l Longshoremen's Ass'n, AFL–CIO v. Davis,* 476

U.S. 380, 389-90 (1986)).  In determining whether a state law cause of action arises out of

conduct that is arguably prohibited by Section 8 of the NLRA, and thus preempted under

*Garmon,* a court must consider whether the same controversy at issue could have been, but was not, presented to the NLRB.  *Id.*  Applying this standard, Plaintiffs' tipping is preempted by the NLRA.

As a threshold issue, Plaintiffs allege they are owed additional monies for gratuities based on the assertion that the "delivery fee" is a tip.  But Stop & Shop and Local 342 have understood for years that the delivery fees do *not* constitute "tips" owed to drivers and indeed negotiated a CBA covering hourly pay rates and other compensation.  If, as Plaintiffs' allegations lead this Court to believe, Local 342 somehow was not aware of the very delivery fee policy that Plaintiffs contend reduced their compensation and the compensation of other bargaining unit drivers in New York, *Garmon* preemption applies.

Under Section 8(a)(5) of the NLRA, the employer and the union must confer in good faith with respect to subjects where there is a mandatory duty to bargain:  namely, wages, hours, and other terms and conditions of employment.  *See* 29 U.S.C. §§ 158(a)(5), (d).  The CBA governing Plaintiffs' employment expressly requires Stop & Shop to bargain in good faith before implementing any policy restricting or impacting drivers' ability to receive customer tips.  *See* Spinella Decl., Ex. A (Article 32, at p. 22).   Yet, Plaintiffs' claim alleges that Stop & Shop did precisely what the CBA and federal labor law do not allow:  restrict and interfere with drivers' ability to receive customer tips without first bargaining with Local 342.  *See* Am. Compl., ¶ 57 ("Pursuant to this policy, Defendants retain the entire charge for delivery and do not remit or pass any portion of it to their delivery drivers."); ¶ 62 ("Defendants go out of their way to avoid simply telling customers that the charge is not a gratuity or tip, and instead is retained by Defendants."); ¶ 68 ("As a result of Defendants' illegal delivery charge policy, Named Plaintiffs and the Class are owed the gratuities illegally retained by Defendants.").  If Plaintiffs' allegations

-10-

are accepted as true, then Stop & Shop has failed to bargain in good faith and unilaterally

implemented a policy that interferes with rights under the CBA and the NLRA.  That failure to

bargain would be conduct that violates Section 8(a)(5) and 8(d) of the NLRA and *must be

adjudicated solely before the NLRB.  Lopresti*, 2001 WL 1132051, at *10 (holding that state law

claim that "essentially allege[d]" that employer did not bargain in good faith regarding plant

closure was subject to *Garmon* preemption); *see also Neshoma*, 2018 WL 2338764, at *4

(dismissing state common law and breach of contract claims after holding that *Garmon*

preemption applied:  "The claims are premised on allegations that the Union did not bargain in

good faith, but instead made bad faith promises that they did not intend to keep in order to

induce Neshoma to sign the renewal agreement. The claims are therefore within the exclusive

jurisdiction of the NLRB because they are covered by the duty to bargain in good faith set forth

in Section 8.  Therefore, the plaintiff's claims are preempted by the NLRA pursuant to *Garmon*.

**B.    Plaintiffs' New York Tip Law Claim is Completely Preempted by Section 301 of the LMRA.**

As an alternative to *Garmon* preemption, Plaintiffs' New York Tip Law claim is

preempted by Section 301 of the LMRA.  *See Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S.

399, 413 (1988).  Section 301 of the LMRA forecloses state law claims that involve the

interpretation of, or are inextricably intertwined with, a CBA.  *See* 29 U.S.C. § 185(a); *Johnson

v. D.M. Rothman Co.*, 861 F. Supp. 2d 326, 332-33 (S.D.N.Y. 2012) (holding that Section 301

barred plaintiffs' New York Labor Law and Fair Labor Standard Act claims).  Such claims must

be adjudicated under a body of federal common law dealing with the enforcement of labor

contracts and not piecemeal and conflicting adjudication under state law.

As noted above, Plaintiffs allege they are owed additional monies for gratuities, even

though the governing CBA provides that Stop & Shop may not restrict "tips" for its delivery

drivers. This allegation cannot coexist with the CBA. In other words, either Stop & Shop has

breached the CBA—giving rise to a Section 301 action—or Local 342 and Stop & Shop have

agreed that the mandatory delivery fees charged to customers is not a "tip" owed to drivers.

Plaintiffs' allegations are thus "inextricably intertwined" with the CBA language and bargaining

history and would, at a minimum, require the Court "to evaluate Plaintiffs' work histories in light

of the intended meaning and purpose of the CBA's terms." *Johnson*, 861 F. Supp. 2d at 332-33.[3]

### C.   Plaintiffs' Tip Claims Are Completely Preempted by the FAAAA.

In 1994, Congress preempted state regulation of certain aspects of the transportation

industry when it passed the Federal Aviation Administration Authorization Act ("FAAAA"),

later amended by the Interstate Commerce Commission Termination Act of 1995. *See Pistolesi*

*v. Calabrese*, No. 11 CIV. 5598 MEA, 2015 WL 1573364, at *4-5 (S.D.N.Y. Apr. 9, 2015). The

overarching goal of the FAAAA is to ensure that transportation rates, routes, and services reflect

---

[3] Even if Plaintiffs' claim could be recast as pleaded under Section 301—rather than under state law—it would still fail as a matter of law. An employee covered by a CBA cannot sue his employer under Section 301 unless he has first exhausted his contractual grievance and arbitration remedies and/or he alleges his union breached its duty of fair representation. *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 37 (1987); *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 653 (1965) ("A contrary rule which would permit an individual employee to completely sidestep available grievance procedures in favor of a lawsuit has little to commend it."); *Nat'l Treasury Emp. Union v. Kurtz*, 636 F.2d 411, 413 (D.C. Cir. 1980) ("The general rule requiring exhaustion of administrative remedies is applicable to labor-management disputes where the issue is subject to a contractual grievance and arbitration procedure."). The applicable Local 342 CBA broadly requires that contractual disputes be resolved through the grievance-arbitration process. *See* Spinella Decl., Ex. A (Article 18, at pp. 16-17). There are two exceptions under which an employee may file a Section 301 breach-of-CBA claim without first exhausting contractual grievance and arbitration remedies: (1) where an employer has effectively repudiated the CBA's grievance procedures; or (2) where the employee brings a hybrid suit alleging that the employer has breached the CBA *and* the employee's union has breached its duty of fair representation. *See Robinson v. Wash. Metro. Area Transit Auth.*, 167 F. Supp. 3d 118, 126-27 (D.D.C. 2016) (citing *Vaca v. Sipes*, 386 U.S. 171, 185 (1967); *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 164 (1983)). Neither of these exceptions applies here.

the "maximum reliance on competitive market forces." *Rowe v. N.H. Motor Transp. Ass'n,* 552 U.S. 364, 367 (2008).  Under the FAAAA, states may not enact or enforce regulations or statutes "related to a price, route, or service of any motor carrier."  49 U.S.C. § 14501(c)(1).  This provision expresses "a broad pre-emptive purpose."  *Rowe,* 552 U.S. at 370.  It preempts local laws "*having a connection with, or reference to*" the rates, routes, or services of motor carriers' transportation of property, even if such connection "*is only indirect*." *Id.* (quoting *Morales v. Trans World Airlines, Inc.,* 504 U.S. 374, 384-86 (1992)) (emphasis added).

Plaintiffs' claim satisfies each of the elements required for FAAAA preemption.  Stop & Shop, which delivers groceries ordered online (Am. Compl., ¶¶ 7-8, 48), is a "motor private carrier" within the meaning the FAAAA.  *See* 49 U.S.C.A. § 13102 (defining "motor private carrier" as used in the FAAAA as an entity transporting property for sale by motor vehicle).  And Plaintiffs' allegations directly "relate[e] to" both Stop & Shop's prices and its services.  Indeed, Plaintiffs challenge not only the delivery fees charged to customers, but the actual manner in which customers obtain delivery services from Stop & Shop.  *See, e.g.*, Am. Compl., ¶ 60 ("For instance, when a customer places their order on the website, the virtual checkout cart simply states that a 'delivery fee' has been added to the total bill, and the amount of the fee.").

The First Circuit's decision *DiFiore v. American Airlines, Inc.,* is directly on point and instructive as to why FAAAA preemption applies in this case.  In *DiFiore,* the First Circuit held that the Airline Deregulation Act ("ADA") preempted claims by American Airlines porters who asserted that the Massachusetts Tip Law entitled them to a $2.00 curbside check-in fee charged to American Airlines customers.  646 F.3d 81 (1st Cir. 2011).[4]  The porters in *DiFiore*, just like

---

[4] This Court has recognized that the FAAAA's preemption provision is "identical" to, and interpreted consistently with, the ADA's preemption provision.  *See Fellows v. CitiMortgage, Inc.*, 710 F. Supp. 2d 385, 400-01 (S.D.N.Y. 2010).

Plaintiffs, claimed that the curbside check-in fee violated the Massachusetts Tip Law because the customers mistook the mandatory service fee for a gratuity paid to the porters. *Id.* at 82.  The First Circuit held that the ADA preempted the Massachusetts Tip Law as applied to the porters' claims because it regulated the services offered by covered carriers and the fees charged for those services. *Id.* at 87.  The First Circuit recently reaffirmed that holding in *Overka v. American Airlines, Inc.*, 790 F.3d 36, 37 (1st Cir. 2015).

Plaintiffs' claim is precisely like the claims alleged *DiFiore* and *Overka*.  In fact, Plaintiffs' original Complaint asserted a claim under the same Massachusetts Tip Law that was held to be preempted in those cases. *See* Dkt No. 1-3.  For the same reasons expressed by the First Circuit in *DiFiore* and *Overka*, Plaintiffs' state law claims are preempted by the FAAAA.[5]

 

 

        **D.**       **Plaintiffs' Amended Complaint Fails to State Any Plausible Claim Against Defendants Under Rule 12(b)(6).**

               **1.**   **Plaintiffs Fail to State a Claim Under the New York Tip Law.**

---

[5] Plaintiffs are expected to argue that FAAAA preemption does not apply because their claim falls within the statute's exception for "the intrastate transportation of household goods." 49 U.S.C. § 14501(c)(2)(B).  However, the term "household goods" as used in the FAAAA refers only to the services of moving companies. *See United Parcel Serv., Inc. v. Flores-Galarza*, 385 F.3d 9, 14 (1st Cir. 2004) (holding that savings clause in FAAAA for "household goods" does not apply to carriers who merely transport "items that may be used in a home"); *Feldman v. United Parcel Serv., Inc.*, No. 06 CIV. 2490(MHD), 2008 WL 800989, at *7 (S.D.N.Y. Mar. 24, 2008), *opinion modified on reconsideration*, No. 06 CIV. 2490 (MHD), 2008 WL 2540814 (S.D.N.Y. June 25, 2008) (holding that "[t]he general understanding is that the household-goods exception [in the FAAAA] is intended to apply to moving companies rather than to air carriers.") (citing *Flores-Galarza,* 385 F.3d at 9).  Plaintiffs do not allege that Stop & Shop or any other Defendant is a "moving company"—nor could they—and therefore their claim cannot be saved by the "household goods" exception to FAAAA preemption.

The totality of Plaintiffs' allegations in connection with their New York Tip Law claim is that: (a) the Website characterizes the delivery fee charge "as a charge for delivery"; (b) the delivery fee is not paid to delivery drivers; (c) customer receipts and the "virtual checkout cart" on the Website do not expressly tell customers that the delivery fee is not a tip; and (d) the Website does not include an option for paying driver tips at the time the order is placed.  Am. Compl., ¶¶ 55-68.  Belying their claims, Plaintiffs do *not* allege that any customer ever told Plaintiffs that they thought the delivery fee was a gratuity paid to drivers, or that Plaintiffs did not actually receive tips.

Plaintiffs' allegations fail to address the controlling legal question of whether reasonable customers were so confused that they believed the fixed delivery fee was actually a tip.  For that same reason, this Court recently dismissed identical claims under Rule 12(b)(6) where the plaintiff-delivery drivers in that case alleged far more facts that those alleged in the Amended Complaint here.  *See Orozco*, 2016 WL 5416510, at *4 (dismissing New York Tip Law claim against grocery delivery service where plaintiffs alleged: that the website "did not explain . . . the purpose of the delivery charge or that [Fresh Direct] was retaining some or all of the charge"; "the bill separates the delivery fee from the fuel charge"; "the delivery fee was within the range of what a reasonable customer would pay as a tip"; plaintiffs "were told by customers on many occasions that the customers thought the 'delivery charge' was a gratuity"; and that plaintiffs "rarely received tips").

The common sense purpose of a tip is to reward hard work and effort.  Given that the fixed delivery fee was inversely related to the size and value of the deliveries—that is, the delivery fee was reduced when more groceries were delivered—any "allegation that the delivery fee was within the range of what a reasonable customer would pay as a tip strains credibility."

-15-

*Orozco*, 2016 WL 5416510, at *4.  The "fact that the delivery fee was a fixed amount regardless of whether groceries were delivered to an apartment in an elevator building or to the fifth floor of a walk-up" makes Plaintiffs' claim even more implausible.  *Id.*  No reasonable customer would believe *that drivers received bigger tips for doing less work*, or that drivers are automatically tipped for every order, regardless of the effort involved in the delivery.  But that is what Plaintiffs ask this Court to conclude.

The unreasonableness of Plaintiffs' position is especially obvious considering that customers can obtain a discounted delivery fee that is as low as $2.95.  *See* Burns Decl. Ex. A. No reasonable customer would conclude that Defendants developed a marketing strategy that encouraged customers to dramatically reduce driver tips.  *See Orozco*, 2016 WL 5416510, at *5 ("[T]he fact that Fresh Direct gave its customers the option of receiving a $2.00 discount on the delivery fee. . . also cuts against the plausibility of Plaintiffs' allegation that a reasonable customer would have expected the delivery fee to have been a tip—no reasonable customer would think that a mandatory tip could be reduced merely because the delivery was made during Fresh Direct's off-peak hours.").[6]

Moreover, even accepting Plaintiffs' factual allegations as true, they have not plausibly alleged that a *reasonable* customer would have understood the delivery fee to have been a gratuity, taking into account common sense and the disclosures on the Website.  The clearly labelled "Service Fees & Tipping" section of the Website informs customers in reasonably-sized,

---

[6] "The delivery fee at issue is analogous to a delivery fee paid at brick-and-mortar grocery stores; in those instances, customers who want their groceries delivered pay a delivery fee at checkout and may choose to tip the delivery worker once the groceries are delivered, taking into account the number of grocery bags and the difficulty of delivering them (e.g., inclement weather or several flights of stairs).  Just as customers of a brick-and-mortar store pay at the time of checkout a delivery fee that is not a tip, so, too, do" the customers here.  *Orozco*, 2016 WL 5416510, at *5.

bold print, just below the description of delivery fees, that "**Tipping is optional**" and that

"[Tipping] is not expected but always appreciated." *See* Burns Decl., Ex. A.  The only

reasonable conclusion to be drawn from the disclosure that tipping is *optional* is that the

*mandatory* delivery fee is not a tip paid to delivery drivers.  *Orozco*, 2016 WL 5416510, at *5.

        Defendants expect that Plaintiffs will argue that their claim is governed by regulations

that apply only to employees working in the hospitality industry, and which create "a rebuttable

presumption that any charge in addition to charges for food, beverage, lodging, and other

specified materials or services, including but not limited to any charge for 'service' or 'food

service,' is a charge purported to be a gratuity."  N.Y. Comp. Codes R. & Regs. tit. 12, § 146-

2.18 (the "Hospitality Wage Order).  That argument is unavailing for two reasons.  First, the

Hospitality Wage Order covers only employees who work in restaurants and hotels, and

therefore by its plain terms simply does not apply to Plaintiffs and other drivers who work in

trucks delivering groceries.  *Id.*, at § 146-3.1; *see also Cordero v. N.Y. Inst. of Tech.*, No. 12-CV-

3208 (SJF), 2013 WL 3189189, at *1 (E.D.N.Y. June 20, 2013) ("The New York Department of

Labor has promulgated additional regulations that are specifically applicable to the 'hospitality

industry . . . .'"); *Orozco*, 2016 WL 5416510, at *4 (holding that Hospitality Wage Order does

not apply to employees employed outside of restaurants and hotels).  Second, even if the

Hospitality Wage Order was found to apply here, then all of the factors described above,

including the disclosures on the Website and delivery fee structure, are more than sufficient to

rebut the presumption that reasonable customers would conclude that the delivery fee is a tip.

### 2.  Plaintiff McAllister Fails to State a Claim Under the WTPA.

McAllister alleges that he did not receive wage notices as required under the WTPA.

Am. Compl., ¶ 71.  However, Stop & Shop's records (which were produced to McAllister prior

to Plaintiffs filing the Amended Complaint) show that at the time of his hire, and in each

subsequent year until his separation in April 2015, McAllister timely received and electronically

signed a fully completed Wage Notice in the exact form approved by the New York Department

of Labor.  *See* Nichols Decl., ¶ 3; Exs. A-C.[7]  To the extent that McAllister alleges that he does

not remember electronically acknowledging his receipt of the wage notices, that type of amnesia

cannot save his claim.  It is well-settled under New York law that an electronic signature is fully

binding and has the same legal force and effect as a manual signature.  *See* Electronic Signatures

and Records Act, N.Y. State Tech. Law § 304 ("[U]nless specifically provided otherwise by law,

an electronic signature may be used by a person in lieu of a signature affixed by hand. The use of

an electronic signature shall have the same validity and effect as the use of a signature affixed by

hand."); *O'Callaghan v. Uber Corp. of Cal.*, No. 17 CIV. 2094 (ER), 2018 WL 3302179, at *7

(S.D.N.Y. July 5, 2018) (stating that an "electronic signature cannot be 'denied legal effect  . . .

simply because it is in electronic form.'" (quoting 15 U.S.C. § 7001(a)(1)).  It is equally well-

settled that an employee's signature on a document is *prima facie* evidence that the employee

---

[7] This Court may consider the wage notices attached to this motion in deciding McAllister's claim under the WTPA.  *See Reyes v. Sofia Fabulous Pizza Corp.,* No. 13CIV7549LAKJCF, 2014 WL 12768922, at *7 (S.D.N.Y. Apr. 7, 2014), *report and recommendation adopted*, No. 13 CIV. 7549 LAK, 2014 WL 1744254 (S.D.N.Y. Apr. 24, 2014) ("The motion to dismiss the plaintiffs' notice claims is based on copies of wage notices provided to ["plaintiffs] when they were hired, submitted by the defendants in conjunction with their motion . . . The plaintiffs' allegation that the defendants did not provide 'proper wage notices' at the time of hiring incorporates by reference the content of the notices actually provided.  I will therefore consider the wage notices submitted by the defendants and examine their sufficiency under the WTPA, NYLL, and the FLSA.") (internal citations omitted).

received the document.  *See Litvinov v. UnitedHealth Grp. Inc.*, No. 13 CIV. 8541 KBF, 2014 WL 1054394, at *3 (S.D.N.Y. Mar. 11, 2014) (where document "indicate[d] [that plaintiffs] electronically acknowledged that she received and reviewed the [policy]…there [wa]s no question that [they] were on notice about the [policy]").  Because there can be no dispute that McAllister timely received and signed all required wage notices, his claim under the WTPA must be dismissed.[8]

### E.  Plaintiffs Should Not Be Permitted To Amend Their Complaint A Second Time.

Because Plaintiffs' claims are preempted as a matter of law by the NLRA, the LMRA, and the FAAAA, any further amendment would be futile.  Moreover, Plaintiffs have been on notice of Defendants' grounds for dismissal since June 2018, and have already been granted the right to amend, and have amended, their complaint.  *See* Dkt. No 31.

For the reasons set forth above, Plaintiffs' Amended Complaint fails to remedy the defects in Plaintiffs' claims.  In sum, those claims are futile, foreclosed by the undisputed documentary evidence incorporated by Plaintiffs' allegations, and cannot be cured by discovery.  Accordingly, Defendants respectfully requests that Plaintiffs' claims be dismissed with prejudice and without leave to amend.  *See Brown v. Daikin Am., Inc.*, No. 10-CV-4688 CS, 2011 WL 10842873, at *1 (S.D.N.Y. Aug. 19, 2011) (refusing leave to amend complaint where plaintiff was apprised at pre-motion conference of the "bases upon which [defendant] intended to (and ultimately did) base its" motion to dismiss); *Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110

---

[8] McAllister's WTPA claim is particularly implausible given that Belizaire, who was employed by Stop & Shop in New York as the time as McAllister, *see* Am. Compl., ¶¶ 7-8, does *not* assert a claim under the WTPA.  The only conclusion that can be drawn from Belizaire's silence is that he received and signed all required wage notices.

(2d Cir. 2001) (amendment futile when the proposed amended complaint could not withstand a motion to dismiss for failure to state a claim under Rule 12(b)).

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully requests that the Court grant their motion to dismiss Plaintiffs' claims in their entirety with prejudice.

Respectfully submitted,

Dated: August 24, 2018
New York, New York

MORGAN, LEWIS & BOCKIUS LLP

By: */s/ Jason D. Burns*
Christopher A. Parlo
Brendan T. Killeen
Jason D. Burns
101 Park Avenue
New York, New York 10178
Tel: (212) 309-6000
Christopher.parlo@morganlewis.com
brendan.killeen@morganlewis.com
jason.burns@morganlewis.com

*Attorneys for Defendant*