**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ANSY BELIZAIRE & ANTHONY MCALLISTER, on behalf of themselves and all other persons similarly situated,<br><br>     Plaintiffs,<br><br>v.<br><br>AHOLD U.S.A, INC., AHOLD DELHAIZE USA, INC., PEAPOD, LLC, & THE STOP & SHOP SUPERMARKET COMPANY LLC,<br><br>     Defendants. | Civil Action No. 18-CV-05020 (LGS) |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANTS' MOTION TO DISMISS**

## TABLE OF CONTENTS

**Page**

I.   ARGUMENT ........................................................................................................1

    A.   Plaintiffs' Conclusory Allegations Fail To Show That A Reasonable Customer Would Conclude That The Delivery Fees Are Tips. ..............................1

    B.   McAllister's Belated Challenge To The Authenticity Of The Wage Notices He Received And Signed Cannot Save His Claim....................................4

    C.   Plaintiffs' Tip Claim Is Preempted By Federal Labor Law...................................5

    D.   Plaintiffs' Tip Claim Is Completely Preempted By The FAAAA.........................7

    E.   Plaintiffs Should Not Be Permitted To Amend Their Complaint A Second Time...................................................................................................................10

II.  CONCLUSION ................................................................................................10

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Alderman v. 21 Club Inc.*,
   733 F. Supp. 2d 461 (S.D.N.Y. 2010) ....................................................................................6

*Allis-Chalmers Corp. v. Lueck*,
   471 U.S. 202 (1985) ...............................................................................................................7

*Am. Libraries Ass'n v. Pataki*,
   969 F. Supp. 160 (S.D.N.Y. 1997) ........................................................................................8

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ...............................................................................................................1

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ...............................................................................................................1

*Bilyou v. Dutchess Beer Distributors, Inc.*,
   300 F.3d 217 (2d Cir. 2002) ..................................................................................................8

*Brown v. Daikin Am., Inc.*,
   No. 10-4688, 2011 WL 10842873 (S.D.N.Y. Aug. 19, 2011) .............................................10

*Clarett v. Nat'l Football League*,
   369 F.3d 124 (2d Cir. 2004) ..................................................................................................6

*Copper v. Cavalry Staffing, LLC*,
   132 F. Supp. 3d 460, 467 (E.D.N.Y. 2015) ..........................................................................4

*Costello v. BeavEx, Inc.*,
   810 F.3d 1045 (7th Cir. 2016) .............................................................................................10

*Dan's City Used Cars, Inc. v. Pelkey*,
   569 U.S. 251 (2013) ...............................................................................................................9

*DiFiore v. Am. Airlines, Inc.*,
   646 F.3d 81 (1st Cir. 2011) ..................................................................................................10

*Fink v. Time Warner Cable*,
   714 F.3d 739 (2d Cir. 2013) ..................................................................................................4

*Fowler v. Scores Holding Co.*,
   677 F. Supp. 2d 673 (S.D.N.Y. 2009) ...................................................................................2

*Hart v. Rick's Cabaret Int'l, Inc.*,
   60 F. Supp. 3d 447 (S.D.N.Y. 2014) ................................................................................... 2

*Johnson v. D.M. Rothman Co.*,
   861 F. Supp. 2d 326 (S.D.N.Y. 2012) ................................................................................. 7

*Kloppel v. Sears Holdings Corp.*,
   No. 17-6296, 2018 WL 1089682 (W.D.N.Y. Feb. 28, 2018) .............................................. 10

*Mumin v. Uber Techs., Inc.*,
   239 F. Supp. 3d 507 (E.D.N.Y. 2017) ................................................................................. 2

*New York State Motor Truck Ass'n v. Pataki*,
   No. 03-2386, 2004 WL 2937803 (S.D.N.Y. Dec. 17, 2004) ............................................... 8

*Orozco v. Fresh Direct, LLC*,
   No. 15-8226, 2016 WL 5416510 (S.D.N.Y. Sept. 27, 2016) ...................................... 2, 3, 4

*Phillips v. Roadrunner Intermodal Servs.*,
   No. 16-1072, 2016 WL 9185401 (C.D. Cal. Aug. 16, 2016) .............................................. 9

*Pistolesi v. Calabrese*,
   No. 11-5598, 2015 WL 1573364 (S.D.N.Y. Apr. 9, 2015) ................................................. 8

*Reyes v. Sofia Fabulous Pizza Corp.*,
   No. 13-7549, 2014 WL 12768922 (S.D.N.Y. Apr. 7, 2014) ............................................... 4

*Salamea v. Macy's East, Inc.*,
   426 F. Supp. 2d 149 (S.D.N.Y. 2006) ................................................................................. 7

*Severin v. Project OHR, Inc.*,
   No. 10-9696, 2011 WL 3902994 (S.D.N.Y. Sept. 2, 2011) ................................................ 7

*Solak v. Hain Celestial Grp., Inc.*,
   No. 17-0704, 2018 WL 1870474 (N.D.N.Y. Apr. 17, 2018) .............................................. 4

*Statler Hilton Hotel*,
   191 NLRB 283 (1971) ........................................................................................................ 6

*Stephenson Haus*,
   279 NLRB 998 (1986) ........................................................................................................ 6

*Tamburino v. Madison Square Garden, LP*,
   115 A.D. 3d 217 (2d Dep't 2014) ....................................................................................... 7

*UPS Store, Inc. v. Hagan*,
   No. 14-1210, 2015 WL 9256973 (S.D.N.Y. Nov. 18, 2015) .............................................. 9

-iv-

**Statutes**

29 U.S.C. § 185 ............................................................................................................................. 6

49 U.S.C. § 13102 ......................................................................................................................... 8

49 U.S.C. § 13501 ......................................................................................................................... 8

Federal Aviation Administration Authorization Act ................................................................. 7-9

Labor Management Relations Act ............................................................................................. 6, 7

National Labor Relations Act ........................................................................................................ 5

New York Labor Law, § 196-d ............................................................................................ *passim*

New York Wage Theft Prevention Act .................................................................................. 1, 4, 5

**Other Authorities**

12 N.Y.C.R.R. § 146-3.1(a) ........................................................................................................... 2

New York Department of Labor Opinion Letter, RO 09-0181 (Mar. 11, 2010) ............................ 3

Fed. R. Civ. P. 12(b)(1) ................................................................................................................. 7

Fed. R. Civ. P. 12(b)(6) .............................................................................................................. 4, 7

As set forth in Defendants' moving papers, Plaintiffs' claim under New York Labor Law § 196-d (the "New York Tip Law"), and McAllister's claim under the New York Wage Theft Prevention Act ("WTPA"), should be dismissed in their entirety, with prejudice. Nothing in Plaintiffs' opposition changes this outcome.

I. **ARGUMENT**

### A. Plaintiffs' Conclusory Allegations Fail To Show That A *Reasonable* Customer Would Conclude That The Delivery Fees Are Tips.

Plaintiffs admit that every customer who places an order for delivery through the Peapod by Stop & Shop Website (the "Website") is advised, in reasonably-sized font, that "Tipping is optional." *See* Dkt. 31 ("Am. Compl.") at ¶ 66. Nonetheless, Plaintiffs argue that a reasonable customer would believe that the delivery fee charged on *every* order—*i.e.,* a mandatory fee that is **not optional**—is actually a tip that is *always* paid to drivers. In other words, Plaintiffs ask this Court to find that a reasonable customer would not understand what "optional" means.

In a fruitless attempt to reconcile their position with common sense, Plaintiffs argue that "customers are led to understand that the [delivery] charge is a gratuity and they are free to leave an additional tip beyond that paid as a mandatory delivery fee." Dkt. 38 ("Opp.") at 3. Plaintiffs fail, however, to allege any facts in support of this conclusory assertion. Plaintiffs do not allege that any customer, ever, withheld a tip from a delivery driver because they were confused by the term "delivery fee," that any customer ever told Plaintiffs they thought the delivery fee was a gratuity, or that Plaintiffs did not actually receive tips. Plaintiffs' bald assertions are precisely what the *Twombly/Iqbal* standard is intended to weed out and why their tip claim should be dismissed for failure to state a cause of action. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007) ("[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.") (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).

-1-

As Defendants anticipated, Plaintiffs argue that their tip claim should survive because of regulations set forth in the Hospitality Industry Wage Order. Plaintiffs also rely on a March 11, 2010 New York State Department of Labor Opinion Letter (the "Opinion Letter") that is specifically addressed to banquet operators and that was issued before the Hospitality Industry Wage Order went into effect. Plaintiffs, however, do *not* allege that they worked in the hospitality industry. Nor can they, as the regulations make clear that the term "hospitality industry" covers restaurants and hotels. 12 N.Y.C.R.R. §146-3.1(a). Contrary to Plaintiffs' assertions, only one case has held that the Hospitality Industry Wage Order applies to employees—in that case, exotic dancers—working outside the hospitality industry: *Hart v. Rick's Cabaret Int'l, Inc.,* 60 F. Supp. 3d 447 (S.D.N.Y. 2014).[1] The *Hart* decision does not cite any authority for that position. Notably, while in the four years since *Hart* was decided no court—federal or state—has reached a similar conclusion, this Court has found error in its analysis. *See Orozco v. Fresh Direct, LLC*, No. 15-8226, 2016 WL 5416510, at * 4 (S.D.N.Y. Sept. 27, 2016). In *Orozco*, the Court correctly concluded that the *Hart* decision is contrary to the plain terms of *both* the Hospitality Industry Wage Order and the Opinion Letter:

> [A] law directed at restaurants and hotels . . . cannot automatically be expanded to regulate every other service industry. This is particularly the case because the Department of Labor's [O]pinion [L]etter was "base[d] . . . on an evaluation of inferences to be drawn from the contract drafting and customer relations practices in [the New York banquet] industry," undercutting any notion that the Department of Labor intended it to be applicable globally to all service employers.

---

[1] Plaintiffs' claim that *Mumin v. Uber Techs., Inc.,* 239 F. Supp. 3d 507 (E.D.N.Y. 2017), and *Fowler v. Scores Holding Co.,* 677 F. Supp. 2d 673 (S.D.N.Y. 2009), applied the Hospitality Industry Wage Order to employees who do not work in the hospitality industry is patently absurd. Neither case mentions the Hospitality Industry Wage Order or the Opinion Letter. In fact, *Fowler* was decided in 2009 before the Hospitality Industry Wage Order went into effect. 677 F. Supp. 2d at 673. *Mumin* and *Fowler* are also readily distinguishable from this case. In *Mumin*, the plaintiffs alleged that Uber violated the New York Tip Law because Uber affirmatively "represent[ed] to riders that [a] gratuity is included in the cost of the fares." 239 F. Supp. 3d at 515. There is no such allegation in the Amended Complaint because the Website contains no such statement. In *Fowler*, the plaintiff-dancer alleged that her managers "took out a percentage of the dancers' gratuities for themselves" and improperly required dancers to share tips with other employees. 677 F. Supp. 2d at 684. Again, there is no such claim here.

*Id.* (citation omitted).

Assuming, *arguendo*, that the Hospitality Industry Wage Order and Opinion Letter apply here, Plaintiffs' allegations still fail to state a claim.[2] First, the Website's disclosures regarding the delivery fees and the optional nature of tips (which is under the heading "**TIPPING**") are prominently displayed in the same, reasonable font size. Dkt. 34 at Ex. A. Second, the "delivery fee" is not labeled as a "driver fee" or otherwise presented in a way that is confusing to a reasonable customer—particularly given that the terms of the mandatory delivery fee are explained directly above the section explaining that "Tipping is optional." *Id.*

The third factor—the purpose and method of calculating the charge—also strongly favors dismissal. Customers are advised that the delivery fee is reduced when they order more groceries, and to as low as $2.95 through customer discounts. Dkt. 33 at 15-16. To put that in perspective, if a customer orders $200 worth of groceries, a delivery fee of $2.95 would amount to a gratuity of 1.48% under Plaintiffs' theory. No reasonable customer would believe that such an amount would constitute the driver's tip or that the driver is paid less for delivering more groceries.[3] The Website also advises customers that the "[d]elivery fee does not include the fuel surcharge." *See* Dkt. 34 at Ex. A. Plaintiffs' argument that a reasonable customer would read this notice to mean the "gratuity does not include the fuel surcharge" belies logic. No reasonable

---

[2] The factors listed in the Opinion Letter are: (1) the font size and prominence of the notice; (2) whether the label used to denote the charge would confuse customers; (3) whether the purpose of the charge and manner in which it is calculated are described to customers; (4) whether the notice discloses the portion of the charge that is being distributed to employees and informs customers to leave an additional payment as a tip; and (5) whether there is a separate line for gratuity. *See* Op. Letter (Mar. 11, 2010), RO-09-0181.

[3] Plaintiffs' misguided attempt to distinguish the facts of this case from *Orozco* only emphasizes the similarities. Plaintiffs argue that the *Orozco* Court "had issue with a fixed [delivery fee] rate, which is not found in this case." Opp. at n.12. Notwithstanding that this case also involves a fixed rate that does not fluctuate with the price of the customers' orders except to ***decrease*** if the customer orders more than $100, the *Orozco* Court "had issue" with the fixed delivery fee in that case because, like here, the delivery fee had no relation to the effort required for a particular delivery. *Id.* at \*5. Here, the facts supporting that reasoning are even stronger because no reasonable customer would believe *that drivers automatically receive a smaller tip for doing more work*.

customer would confuse a tip for a fuel surcharge, or *vice versa*. Moreover, the delivery fee is explained on the Website side-by-side with the customer notice about the "pick-up" fee that applies to customers who pick up their orders themselves, rather than having them delivered. *Id.* Thus, the Website puts customers on notice that the delivery fee is an administrative charge which, like a fuel surcharge or pick-up fee, is not paid to drivers.

As to the fourth factor, the Website does not state or even imply that the delivery fee is paid to drivers; rather, customers are *encouraged* to tip the drivers upon delivery. *See* Dkt. 34 at Ex. A ("[Tipping] is always appreciated."). Though the online order form does not contain a separate line for tips when orders are placed from some locations in New York, given the totality of the circumstances and factors described above, no reasonable customer would conclude, based solely on this fifth and last factor, that the delivery fee is a driver tip. *See Orozco*, 2016 WL 5416510, at *4 (granting motion to dismiss, notwithstanding that delivery website did not allow customers to include online tips).[4]

### B. McAllister's Belated Challenge To The Authenticity Of The Wage Notices He Received And Signed Cannot Save His Claim.

Plaintiffs' *only* argument in response to records showing that McAllister timely received and executed proper Wage Notices is their vague and belated challenge to the "authenticity" of the Wage Notices. Opp. at 24-25.[5] Defendants provided McAllister's executed Wage Notices to Plaintiffs well before they filed the Amended Complaint. Dkt. 20 at n.1. Nonetheless,

---

[4] Courts in the Second Circuit routinely hold that claims, as here, based on the "reasonable customer" standard may be dismissed under Rule 12(b)(6). *See Solak v. Hain Celestial Grp., Inc.*, No. 17-0704, 2018 WL 1870474, at *3 (N.D.N.Y. Apr. 17, 2018) ("[I]t is well settled that a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer") (citing *Fink v. Time Warner Cable*, 714 F.3d 739, 740 (2d Cir. 2013) (applying reasonable consumer standard and affirming 12(b)(6) dismissal)).
[5] This Court may consider the wage notices attached to this motion in deciding McAllister's WTPA claim. *Reyes v. Sofia Fabulous Pizza Corp.*, No. 13-7549, 2014 WL 12768922, at *7 (S.D.N.Y. Apr. 7, 2014); *see also Copper v. Cavalry Staffing, LLC*, 132 F. Supp. 3d 460, 467 (E.D.N.Y. 2015) (holding that because plaintiffs "referr[ed] to the completeness and inaccuracy of the[ir] wage statements in their complaint, the court could consider the "wage statements attached to defendants' motion to dismiss without converting it to a motion for summary judgment").

Plaintiffs did not make a single revision to McAllister's baseless claim to address the Wage Notices or otherwise challenge their authenticity. *Compare* Compl. at ¶¶65-68 *with* Am. Compl. ¶¶ 69-72.  Now, facing dismissal, McAllister still cannot set forth any grounds for disputing the authenticity of the Wage Notices and notably does not submit a declaration stating as much. That McAllister did not submit such a declaration further confirms that Plaintiffs' assertion about the Wage Notices' "authenticity" is just empty rhetoric.  Neither Plaintiffs' Amended Complaint nor their opposition actually challenges the authenticity of the Wage Notices—let alone purport to explain how the notices are not "authentic."  As a result, McAllister offers no factual allegations that could lead this Court to conclude that the Wage Notices are inaccurate or incomplete, and therefore his WTPA claim should be dismissed.

### C. Plaintiffs' Tip Claim Is Preempted By Federal Labor Law.

Plaintiffs' Amended Complaint places this Court at the center of a "tip" dispute impacting Local 342, the collective bargaining agreement ("CBA") negotiated between Stop & Shop and Local 342, and the National Labor Relations Act ("NLRA").  As a result, federal labor laws preempt the adjudication of Plaintiffs' New York Tip Law claim in this Court.

The purpose of *Garmon* preemption is to avoid federal and state court litigation that should be pursued as an unfair labor practice claim before the National Labor Relations Board ("NLRB").  Plaintiffs invoke a red herring argument by asserting that Defendants raise a facial attack to a "minimum protections" state law.  Opp. at 4-6.  Defendants do not contend that the NLRA displaces the New York Tip Law in all cases; rather, Defendants have invoked an *as-applied* jurisdictional challenge based on Plaintiffs' Amended Complaint.  *See* Dkt. 33 at 9-11. *In this case*, the NLRB has exclusive jurisdiction to determine if Stop & Shop violated the duty to bargain in good faith and to comply with Article 32 of the CBA by restricting Plaintiffs from receiving or accepting "tips," and to remedy any such violation with monetary damages.  *See,*

-5-

*e.g.*, *Clarett v. Nat'l Football League*, 369 F.3d 124, 136 (2d Cir. 2004) ("federal labor law provides a 'soup-to-nuts array of rules and remedies'").

Plaintiffs also assert that, because New York Law is the basis for their tip claim, the claim is not "identical" to an unfair labor practice charge that can be filed with NLRB. Opp. at 6-7. However, if merely citing a state law foreclosed *Garmon* preemption, then *Garmon* preemption would effectively cease to exist. Rather, the threshold legal standard asks whether the cause of action "arguably" implicates an unfair labor practice. Dkt. 33 at 9. Even a strict "identical claim" standard still does not foreclose *Garmon* preemption because Plaintiffs' New York Tip Law claim is, in fact, identical to an unfair labor practice charge that could be brought before the NLRB. That charge would mirror the tip claim alleged in the Amended Complaint:

> Stop & Shop has failed to bargain in good faith and unilaterally modified the compensation provisions of the Local 342 CBA to restrict employees from receiving or accepting tips by implementing a customer delivery fee policy whereby customers are charged delivery fees that are represented as tips to be paid to the employees, yet are actually not paid to the employees.

The NLRB can prosecute and has prosecuted claims over tips, and has held that changes to employer policies governing the receipt of tips is a mandatory subject of bargaining. *See, e.g.*, *Stephenson Haus*, 279 NLRB 998 (1986); *Statler Hilton Hotel*, 191 NLRB 283 (1971).

As an alternative to *Garmon* preemption, Section 301 preemption applies here because the Court would be compelled to reconcile the CBA with Plaintiffs' claim. Section 301 of the Labor Management Relations Act creates a federal cause of action for breaches of contracts between labor organizations and employers. 29 U.S.C. § 185(a). By virtue of Article 32 of the CBA, Plaintiffs effectively allege a *breach of contract* covering all tips allegedly owed to Plaintiffs and other delivery drivers.[6] That is, by alleging that Defendants have not paid

---

[6] Because Plaintiffs are owed *all tips* from customers—not just a minimum floor or percentage under the CBA, the cases Plaintiffs cite in challenging Section 301 preemption are inapposite. *Cf. Alderman v. 21 Club Inc.*, 733 F.

-6-

Plaintiffs all tips received from customers, Plaintiffs allege that Stop & Shop has violated the CBA.  The fact that Plaintiffs are not interested in pursuing a Section 301 claim, or arbitration under the applicable CBA, does not change the fact that Section 301 preemption applies. "[Q]uestions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, must be resolved by reference to uniform federal law." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 211 (1985).  Those principles dictate the proper interpretation and analysis of Article 32 of the CBA, its bargaining history, and Local 342's understanding of whether or not the "delivery fee" is a purported gratuity.[7]  Adjudicating the New York Tip Law claim divorced from these federal common law principles triggers the very concern that has led federal courts to apply Section 301 preemption in the context of employment litigation that is, as here, "inextricably intertwined" with CBA language—even where plaintiffs cite state law as the ostensible basis for their claim. *See, e.g.*, *Johnson v. D.M. Rothman Co.*, 861 F. Supp. 2d 326, 332-33 (S.D.N.Y. 2012); *Salamea v. Macy's E., Inc.*, 426 F. Supp. 2d 149, 155 (S.D.N.Y. 2006).

### D.  Plaintiffs' Tip Claim Is Completely Preempted By The FAAAA.

Plaintiffs seek to avoid preemption of their tip claim by arguing that the local nature of the deliveries they performed means that Defendants are not engaged in interstate commerce, and therefore not "motor private carriers" under the FAAAA.  Plaintiffs' own allegations confirm that they were employed as delivery drivers transporting groceries (*i.e.*, "property") in motor

---

Supp. 2d 461 (S.D.N.Y. 2010) (no Section 301 preemption because plaintiffs' state claim sought more than the 18% guaranteed gratuity provided in CBA); *Tamburino v. Madison Square Garden, LP*, 115 A.D. 3d 217 (2d Dep't 2014) (no Section 301 preemption where plaintiffs only sought *difference between* CBA tip obligation and the tips allegedly owed under state law).

[7] The Court may properly consider the CBA in evaluating Defendants' 301 preemption argument, particularly as Defendants seek to dismiss Plaintiffs' tip law claim under both Rule 12(b)(1) and Rule 12(b)(6).  *See, e.g., Severin v. Project OHR, Inc.*, No. 10-9696, 2011 WL 3902994 (S.D.N.Y. Sept. 2, 2011) (considering CBA that was neither "referenced in or appended to the Complaint" on a motion to dismiss NYLL minimum wage and overtime claims on Section 301 preemption grounds); *Salamea v. Macy's East, Inc.*, 426 F. Supp. 2d 149, 152 (S.D.N.Y. 2006).

vehicles.  *See* Am. Compl., ¶¶ 7-8, 32, 44, 48.  Moreover, Plaintiffs allege that Defendants "own and operate an online grocery delivery company that serves various markets, including areas in Illinois, Wisconsin, Indiana, Maryland, Virginia, Massachusetts, and New York." *Id*.  Thus, according to Plaintiffs' own allegations, Defendants are "motor private carriers" whose services involve interstate commerce, even if Plaintiffs did not themselves cross state lines.  *See, e.g.*, *Bilyou v. Dutchess Beer Distributors, Inc.*, 300 F.3d 217, 223 (2d Cir. 2002) ("[T]he interstate commerce requirement of [49 U.S.C. § 13501] is satisfied if the goods being transported within the borders of one State are involved in a 'practical continuity of movement' in the flow of interstate commerce.").  *See also Am. Libraries Ass'n v. Pataki*, 969 F. Supp. 160, 173 (S.D.N.Y. 1997) (reaching the "inescapable conclusion [] that the Internet represents an instrument of interstate commerce").

In any event, it does not matter whether Stop & Shop is considered a "motor private carrier" that is engaged in interstate commerce or a "motor carrier" that is not. The FAAAA covers both.  *See id.*, § 14501(c)(1).[8]  Plaintiffs' argument that they personally were engaged in intrastate activity also is immaterial because the "FAAAA . . . effectively preempts state regulations of ***intrastate motor carrier activities***."  *New York State Motor Truck Ass'n v. Pataki*, No. 03-2386, 2004 WL 2937803, at *4 (S.D.N.Y. Dec. 17, 2004) (emphasis added).[9]

---

[8] Both "motor carriers" and "motor private carriers" transport property by motor vehicle.  *See* 49 U.S.C. §§ 13102(14)-(16), (23).  The practical difference between "motor carriers" and "motor private carriers" is that the latter must be engaged in interstate commerce and own the property being delivered, while the former is compensated for transporting the property.  *Id.*  **As alleged by Plaintiffs, Stop & Shop charges a fee to deliver groceries by motor vehicle; therefore, even if Stop & Shop was found not to be a "motor private carrier," it would meet the definition of "motor carrier."**  *See* 49 U.S.C. §§ 13102(14), (23) ("motor carrier" includes companies transporting property by motor vehicle for compensation).  While Plaintiffs' mistakenly argue that grocery deliveries are subject to the household goods exemption to the FAAAA, *see infra*, by invoking that exemption in their opposition Plaintiffs effectively admit that Stop & Shop is a covered motor carrier that is compensated for transporting property.  *See* 49 U.S.C. § 13102(10) (property is "household goods" only if the customer pays the carrier to transport the goods).

[9] For example, in *Pistolesi v. Calabrese*, No. 11-5598, 2015 WL 1573364, at *5 (S.D.N.Y. Apr. 9, 2015), the court held that a local rule enacted by the Village of Wappingers Falls was preempted under the FAAAA, notwithstanding that the rule applied solely to *purely intrastate motor carriers* operating within that small town.  *Id.*

Plaintiffs' argument that grocery deliveries fall within the FAAAA's exception for "the intrastate transportation of household goods" is equally unavailing. As an initial matter, it would be nonsensical and completely superfluous for Congress to include an *exception* for the "intrastate transportation" of specific goods if, as Plaintiffs argue, *all* intrastate activities are excluded from FAAAA preemption. Putting that contradiction aside, Plaintiffs do not cite a single case holding that transportation of groceries is exempt from FAAAA preemption. In contrast, the authority cited by Defendants directly supports the conclusion that "household goods" means only property transported by moving companies. *See* Dkt. 33 at 14, n.5. Accordingly, the household goods exception does not apply to Defendants.

Plaintiffs similarly misapprehend the broad preemptive reach of the FAAAA. Contrary to Plaintiffs' opposition, under *Dan's City Used Cars, Inc. v. Pelkey*, 569 U.S. 251, 261 (2013), the relevant inquiry is whether the plaintiff's *claim*, not the statute or regulation, concerns the transportation of property. *See UPS Store, Inc. v. Hagan*, No. 14-1210, 2015 WL 9256973, at *3 (S.D.N.Y. Nov. 18, 2015) (rejecting plaintiffs' argument that FAAAA "does not preempt state laws of general application"); *Phillips v. Roadrunner Intermodal Servs.*, No. 16-1072, 2016 WL 9185401, at *3-4 (C.D. Cal. Aug. 16, 2016) (plaintiff's wage and hour claims involved the "transportation of property" under the FAAAA because, as here, "every aspect of the Plaintiff's job concerned the transportation of property"). Plaintiffs' claim directly concerns Stop & Shop's services of transporting property (groceries) and is thus covered by the FAAAA. Indeed, Plaintiffs' argument that their claim does not relate to Stop & Shop's services is belied by their own allegations. Plaintiffs allege that, to comply with the New York Tip Law, Stop & Shop must either (1) no longer charge delivery fees or (2) change the way customers order groceries, including by modifying customer disclosures on the Website and allowing customers to add

credit card tips online.  *See* Am. Compl. ¶¶ 60-65; Opp. at 14. [10]  These proposed customer-facing changes to Stop & Shop's *services* are "just what Congress did not want states regulating, whether at high cost or at low."  *DiFiore v. Am. Airlines, Inc*., 646 F.3d 81, 88 (1st Cir. 2011) (holding that plaintiffs' claim was preempted where they alleged defendant was required to modify its website disclosures and allow credit card payments to comply with Massachusetts' tip law).[11]

### E.  Plaintiffs Should Not Be Permitted To Amend Their Complaint A Second Time.

Plaintiffs already amended their complaint after Defendants filed *two* pre-motion letters detailing their arguments.  *See* Dkt. 21, 30.  Plaintiffs should not be permitted to amend their complaint again as there is no basis to conclude that their claims could withstand a motion to dismiss.  Accordingly, Defendants respectfully request that Plaintiffs' claims be dismissed with prejudice and without leave to amend.  *See Brown v. Daikin Am., Inc.*, No. 10-4688, 2011 WL 10842873, at *1 (S.D.N.Y. Aug. 19, 2011).

## II.  CONCLUSION

For the foregoing reasons, Defendants respectfully requests that the Court grant their motion to dismiss Plaintiffs' claims in their entirety with prejudice.

---

[10] By arguing that Defendants could avoid liability by "clarifying" that the delivery fees are not tips (Opp. at 14), Plaintiffs tacitly acknowledge that the delivery fees are not gratuities to be paid to drivers.

[11] For this reason, the cases relied upon by Plaintiffs alleging meal and rest break, independent contractor misclassification, and retaliatory discharge claims are readily distinguishable because they concern matters that "govern a carrier's relationship with its workforce."  *Kloppel v. Sears Holdings Corp.*, No. 17-6296, 2018 WL 1089682, at *4 (W.D.N.Y. Feb. 28, 2018).  In contrast, Plaintiffs' claim *on its face* directly relates to the rates charged and services provided to Stop & Shop *customers*, and is therefore preempted by the FAAAA.  *Id.* ("The FAAAA indeed preempts state laws that explicitly refer to rates, routes, or services regardless of the state law's *effect* on those three things."); *see also Costello v. BeavEx, Inc.*, 810 F.3d 1045, 1054 (7th Cir. 2016) ("Laws that affect the way a carrier interacts with its customers fall squarely within the scope of FAAAA preemption.").

|  |  |
|---|---|
|  | Respectfully submitted, |
| Dated: September 28, 2018<br>New York, New York | MORGAN, LEWIS & BOCKIUS LLP<br><br>By: */s/ Jason D. Burns*_____<br>    Christopher A. Parlo<br>    Brendan T. Killeen<br>    Jason D. Burns<br>    101 Park Avenue<br>    New York, New York 10178<br>    Tel: (212) 309-6000<br>    Christopher.parlo@morganlewis.com<br>    Brendan.killeen@morganlewis.com<br>    Jason.burns@morganlewis.com<br><br>    *Attorneys for Defendant* |